# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
June 2000 Session

## JOANNA MAY BUTTON BAGGETT v. DENNIS KEITH BAGGETT

**An Appeal from the Chancery Court for Houston County**
**No. 5-83     Allen W. Wallace, Judge**

___

**No. M1999-00742-COA-R3-CV - Filed August 25, 2000**

___

This is a divorce case involving child custody.  After awarding the mother temporary custody of the parties' children during the pendency of the case, the trial court granted the father sole custody and granted the mother visitation.  The mother appealed the custody award.  We affirm.

**Tenn.R.App.3; Judgment of the Chancery Court is Affirmed.**

HOLLY KIRBY LILLARD, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, joined.

Troy L. Brooks, Clarksville, Tennessee, for the appellant, Joanna May Button Baggett.

James Phillips Bradley, Waverly, Tennessee, for the appellee, Dennis Keith Baggett

## MEMORANDUM OPINION[1]

On February 12, 1998, Petitioner/Appellant Joanna May Button Baggett ("Mother") filed a complaint for divorce from Respondent/Appellee Dennis Keith Baggett ("Father"). On April 20, 1998, Father filed an answer and counter-complaint for divorce.  Both Mother and Father sought sole custody of the parties' two minor children, Jennifer Rose Baggett ("Jennifer"), born May, 16, 1992, and Sarah May Baggett ("Sarah"), born September 7, 1994.

On May 15, 1998, the trial court held a hearing to determine which party would have temporary custody of the children during the pendency of the case.  At the hearing, Mother testified that she had been the children's primary caretaker since their birth.  She stated that she has a job and that she was

___

[1] Rule 10 (Rules of the Court of Appeals of Tennessee).  (b) **Memorandum Opinion**.  The Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value.  When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in a subsequent unrelated case.

in counseling with the Tennessee Department of Human Services. Father testified that he is employed earning seven dollars per hour.

Following the hearing, on June 3, 1998, the trial court entered an order granting Mother temporary custody of the parties' children and awarding Father visitation every other weekend. The trial court ordered that no member of the opposite sex be present in the household when Mother or Father had the children.

On October 7, 1998, the trial court entered an order granting Mother and Father a divorce. The order reserved the issue of permanent custody pending a hearing on January 8, 1999.

On December 15, 1998, Mother filed an emergency petition to suspend Father's visitation in which she alleged that both of the parties' children had been sexually abused by Father during visitation. Following a hearing on January 8, 1999, the trial court ordered Mother, Father and the children to undergo psychiatric evaluation with Dr. William Kenner ("Dr. Kenner"). The trial court directed Dr. Kenner to make a report of his evaluation available to the trial court. The trial court granted Father supervised visitation with the children.

Dr. Kenner interviewed each family member, as well as a member of Mother's family, Jennifer Clairaday ("Clairaday"), whose aunt adopted Mother as a child. In addition, Dr. Kenner obtained separate psychological testing of Mother by Dr. Auble. A report of his findings was submitted to the trial court.

In the report, Dr. Kenner first noted that Mother said that Sarah had made statements to her raising the issue of sexual abuse. Mother stated that Jennifer also allegedly said that Father had put her to bed and had gone into her bedroom. Dr. Kenner further stated in his report that Father had an ordinary personal background. Dr. Kenner said that Father has no family or personal history of drug or alcohol abuse. He observed that Father appeared concerned for his children's welfare and "shocked" by Mother's allegations of sexual abuse. Dr. Kenner said that Father denied any inappropriate behavior with his daughters. Dr. Kenner concluded that no diagnosis of mental illness was possible for Father.

Dr. Kenner noted that Mother told him that she had been sexually abused by her brother as a young child. She stated that her father had molested the same brother, that her father had "messed with" her sister and sister-in-law, and that her father later attempted to "see [Mother's] chest" as she came out of the shower when she was an adolescent. Mother told Dr. Kenner that she was removed from her father's custody by state authorities when she was thirteen years old. Dr. Kenner noted that Mother admitted that she abused alcohol during her marriage to Father but that she claimed to have stopped drinking when the parties separated.

In his report, Dr. Kenner also described his interview with Clairaday. Clairaday described Mother as "impulsive," with "limited ability to temper her behavior." She said that Mother's impulsiveness had created problems with her children. Clairaday stated that Mother often yelled at Jennifer and Sarah, and that the children appeared hyperactive when they were with Mother. Clairaday stated that there was a marked difference in the children's behavior when they were with Father.

In his report, Dr. Kenner also discussed the separate psychological testing of Mother by Dr. Auble. Dr. Kenner stated that Dr. Auble's findings were consistent with Clairaday's description of Mother. Dr. Auble's found that Mother's cognitive style often leads her to jump to conclusions without looking at all the data. Dr. Kenner stated that Dr. Auble's findings and Clairaday's description are consistent with a personality disorder that one would expect after Mother's history of abuse and neglect.

In Dr. Kenner's interview with Jennifer and Sarah, both of the children described positive feelings toward Father. Dr. Kenner observed that both Jennifer and Sarah were hyperactive. He stated that, while the girls' behavior could result from ADHD, it may also be related to anxiety about being with Mother. Neither child described any behavior consistent with sexual abuse.

Dr. Kenner concluded that there was no support for Mother's allegation of Father's sexual abuse of the parties' children. Instead, Dr. Kenner believed that the results of his evaluation raised serious doubts about Mother's competence to raise Jennifer and Sarah. He stated that risk factors affecting Mother's ability to parent the parties' children included Mother's potential for alcohol abuse and her reaction if she were to lose the support of her second husband.

On September 17, 1999, the trial court held a hearing to determine final custody of the parties' children. Neither party presented any proof at the hearing. Therefore, the trial court had before it the parties' testimony at the January 8, 1999 hearing, as well as Dr. Kenner's report.

On September 22, 1999, the trial court entered an order granting Father sole custody of the parties' children. The trial court ordered that Mother pay child support to Father and awarded Mother visitation with the children. From this order, Mother now appeals.

On appeal, Mother argues that the trial court erred by emphasizing the results of Dr. Kenner's psychiatric evaluation to the exclusion of the statutory factors in making its custody determination. Father argues that the trial court did not err in its custody award.

The issue of child custody is reviewed *de novo*, with a presumption of correctness in the trial court's findings of fact, unless the evidence preponderates against them. *See* Tenn.R.App.P. 13(d). The welfare and best interest of the child are the primary concerns in child custody proceedings. *See* Tenn. Code Ann. § 36-6-106 (Supp. 1999); **Whitaker v. Whitaker**, 957 S.W.2d 834, 837 (Tenn. Ct. App.1997). The trial court must also consider the factors set forth in Tennessee Code Annotated §

36-6-106.[2]  The determination of the child's best interests must turn on the particular facts of each case.  *See Taylor v. Taylor*, 849 S.W.2d 319, 326 (Tenn. 1993).

In this case, neither Mother nor Father offered any proof at the hearing to determine custody of the parties' children.  Consequently, the only evidence available to the trial court was that adduced during the prior temporary custody hearing and Dr. Kenner's report.  At the temporary custody hearing, both Mother and Father testified that they had jobs.  Mother stated that she had been the children's primary caretaker since birth.  Following the temporary custody hearing, Mother was granted temporary custody of the children during the pendency of the case.

In Dr. Kenner's report, he concluded that Mother's allegations of child sexual abuse against Father could not be supported.  As to Father, Dr. Kenner found that no diagnosis of mental illness was possible.  He also noted that both Jennifer and Sarah described positive feelings for Father.

As to Mother, Dr. Kenner expressed "serious doubts" about her ability to properly raise the children.  Dr. Kenner observed that Mother had abused alcohol in the past and that her potential for future abuse was a risk factor that could affect her parenting ability.  Dr. Kenner noted Clairaday's description of Mother as "impulsive" and Clairaday's statement that Mother's behavior had affected her daughters.  Based on our review the evidence, we cannot conclude that the evidence preponderates

---

[2]Tennessee Code Annotated § 36-6-106 provides that the following factors be considered in child custody cases:

(1) The love, affection and emotional ties existing between the parents and child;
(2) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;
(3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment . . .;
(4) The stability of the family unit of the parents;
(5) The mental and physical health of the parents;
(6) The home, school and community record of the child;
(7) The reasonable preference of the child if twelve (12) years of age or older.  The court may hear the preference of a younger child upon request.  The preferences of older children should normally be given greater weight than those of younger children;
(8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person . . .;
(9) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child; and
(10) Each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child.

*Id.*

-4-

against the trial court's finding that it was in the children's best interest to award custody to Father. The trial court's award of custody to Father is affirmed.

The decision of the trial court is affirmed. Costs are assessed against the Appellant, Joanna May Button Baggett, and her surety, for which execution may issue, if necessary.

_____
HOLLY KIRBY LILLARD, J.